Warner, J.
This is an, action, to appropriate 'certain property described in *326 the petition, consisting substantially of the right of way now in use by the plaintiff to reach its terminal on East Court street.
The case is now submitted upon questions arising upon the preliminary hearing. The usual proofs have been presented by the plaintiff as to its existence and right to make the appropriation, the necessity thereof, and its inability to agree with the defendant owner. An agreed statement of facts is presented upon which the defendant claims as a matter of law that the tract sought to be appropriated and lying between Elsinore avenue and Des Moines avenue, and designated as parcel “B” in the petition, is park property and as such is not subject to appropriation in this case, since to permit this would prevent its use for park purposes; and that the tract known as a part of Marquis street and designated as parcel “D” in the petition, lying between McMillan street and the Montgomery road, is a dedicated public street, the appropriation of which would prevent its use by the public; and that in both instances the doctrine of joint occupancy for different public purposes as declared by the Supreme Court in cases cited applies, and that in the absence of express authority from the Legislature such property can not be appropriated for the exclusive use of the expropriator.
The absence of such express authority in the statute must be conceded, and that the exclusive use will be the result of an appropriation is admitted in the agreed statement of facts. The plaintiff, however, contends that the property north of Elsinore avenue is not park property, and that if it was such, the plaintiff could still appropriate a right of way through it, inasmuch as the defendant owns it in fee simple without limitation; that 'in any event the defendant is estopped because by contract it permitted the plaintiff to establish this right of way at great expense as a public utility, and to use same for thirty years, during which time many citizens have adjusted their business interests with reference to transportation over this line; and finally that under Section 6448 the defendant could only notify the plaintiff to proceed to appropriate or sue for the value of the property.
As to Marquis street, the plaintiff contends that it has never been improved or used as a street, and that the topography of the locality precludes any such use, and. that the defendant has *327 become the owner in fee simple of this street by adverse possession through its tenant, the plaintiff, whereby all rights of the public therein have been extinguished.
In this decision the court will only consider those points arising upon the agreed statement of facts, and law applicable thereto that seem to be decisive of the jurisdictional questions now raised.
First, as to parcel “B.” It seems to be conceded that the property south of Elsinore avenue, parcel “A,” and north of Des Moines avenue, parcel “C,” sought to be appropriated, is not adapted to, or sought to be used as, park property, and that the property lying between said avenues (pareql “B”) is the subject of controversy herein.
Under the facts can the right of way between said avenues, used by plaintiff under contract with defendant for thirty years, be now fairly considered as park property? It appears that the most of the property lying west of what is now Gilbert avenue, and probably a part of the tract now constituting said avenue, was in 1866 an insignificant part of what was then known as the ‘ ‘ Garden of Eden, ’ ’ consisting of a hollow or gulch in no way adapted to park purposes, and only dignified by the name of park, because it was a portion of said Garden of Eden, now Eden Park. In that year the executors of Nicholas Longworth leased perpetually said Garden of Eden to the defendant, with a privilege of. purchase, which was exercised in 1881, whereupon an unconditional fee simple in said property vested in said defendant. In 1876 the defendant granted to the predecessor in title of the plaintiff by ordinance a thirty year lease of said right of way through said park property, which ordinance also granted for a like period a right of way across and along various streets, and the right to tunnel under others, to obtain an entrance into the city.
The grantee was required to construct said right of way at its own expense, to the satisfaction of the city engineer, and hold the city harmless from all damages to abutting owners. It was also specially provided ‘ ‘ and to the end that said park property may .be partially filled, and the fill of Gilbert avenue supported, said company shall, at its own expense, within five years *328 from the passage hereof, fill along and over said property between Effluent Pipe street and Eden Park entrance to the level and width of the railroad tracks.” The right of way into the city as granted in this ordinance was constructed substantially as it now exists. Ten years later the board of public works unanimously adopted the following resolution pursuant to legislative special authority.
“Resolved, That all that part of the Eden Park property lying north and west of Gilbert avenue is no longer needed for park or municipal purposes, and the engineer is hereby requested to prepare plat and make subdivision of said property as may be desired by the trustees of the sinking fund. ’ ’
The plat and subdivision was made excluding said right of way, but dividing the balance of said property into lots, many of which were subsequently sold. Fourteen years later the board of city affairs unanimously passed the following resolution :
“Be it Resolved, That this board hereby declares that all the lots 'remaining unsold in the Eden Park subdivision lying west of Gilbert avenue are necessary for park purposes, and are hereby reserved, and that the trustees of the sinking fund be notified of this action, and requested not to sell or lease any of the said property. ’ ’
It will be noted that this resolution did not include said right of way or declare the same necessary for park purposes. It is common knowledge that about this time the hollow or gulch had become mostly filled as a city dump between said right of way and Gilbert avenue.
Upon these facts it must be concluded that at the time of the grant of said right of way, that part of the Eden Park purchase west of Gilbert avenue was not considered available for park purposes, and was a few years later legally and officially abandoned as park property. It seems also reasonable to conclude that in granting said right of way, the city authorities did not expect, nor its grantee consider; a vacation and return of the property at the expiration of the grant. The cost of construction, 'the nature of the use, and the public character of the enterprise repels- this conclusion, and -indicates rather *329 that at the end of the period granted, some new grant would be concluded or right of way preserved by legal appropriation, and the failure to include the right of way in the subsequent dedication to park purposes fairly confirms this view.
As a conclusion the court finds that said tract known as parcel “B” in the petition is not park property, and may be appropriated in this proceeding, and that the defendant is estopped from claiming said tract as exempt from such appropriation.
Second, as to parcel “D.” In 1850 the owners of the land in and about this parcel, now known as Marquis street, a part of which is sought to be appropriated in this case, made, acknowledged and recorded a plat thereof by which said Marquis street as so platted was dedicated to public use. The defendant has always since recognized it as a dedicated street, but has-never improved and graded that part of it involved in this ease. For thirty-years, expiring in 1906, the plaintiff and its predecessor in title occupied said parcel “D” with railroad tracks under grant from the defendant. The topography of the entire section about and including this parcel is such- as to practically prohibit its improvement and use as a street. In 1872 and again in 1873 a grade was established for said street, but it is apparent thait the grade as established was- then so abrupt as to preclude the consideration of the city authorities as to its improvement, and contributed to the passage' of the ordinance granting the thirty years'use of a right of way over said parcel “D.” The situation has not improved since 1876, but rather has become worse by the subsequent improvement of McMillan street, making any possible grade of Marquis street from- the grade of the Montgomery road to the present grade of McMillan street practically prohibitive of public travel. Common knowledge of the improvement of streets in that section of the city indicates very clearly 'the futility of any improvement of that part of Marquis street included in said parcel “D.”' It is also apparent that the cost of improving said street would be far in excess of any resulting public or private benefit. It must be conceded under the law as now settled by the Supreme Court of this state, that if said Marquis street was now improved and used as a public street that there is no way by which its *330 permanent and exclusive use by the plaintiff for its purposes could be obtained. It is also clear that this court under the power possessed to prevent the abuse of the exercise of appropriation proceedings, would refuse to permit a dedicated street, not yet improved and used, to be appropriated permanently and exclusively for railroad or other purposes, if there was any reasonable prospect that its public-use might become nece&sary or desirable.
Maxwell & Ramsey, for plaintiff.
Walter A. DeCamp, contra.
In Railway Co. v. Elyria, 69 O. S., 414, in reiterating and emphazising the doctrine of joint occupancy of public streets, the Supreme Court recognize the necessity of “the proper establishment and opening of the street” for public use as an essential part of said doctrine, but never has gone so far as to declare that an unimproved and unused street, dedicated to public use, but practically uihsuited therefor, could not be appropriated permanently and exclusively for other purposes than such as usually appertain to a public highway. Nor has the court found any case in any state going to-that extent. Whether a dedicated street situated as is Marquis street, so as to be unsuited for public purposes, may be appropriated for the permanent and exclusive use of a railroad company, is a question upon which the court has not found any direct authority, and which must be determined on'principle. No substantial reason appears why s-uch appropriation may not be made. The public will be benefitted by the operation of the railroad in such street, while otherwise the street would be of no use to any one. A street on paper only can not be a public street. Upon full consideration therefore the court-is of the opinion that an appropriation of parcel “D” may be made as prayed for in the petition.